### LARSEN v. NEAL et al.

(Circuit Court of Appeals, First Circuit.   March 8, 1912.)

No. 947.

SALES (§ 363*)—DIRECTION OF VERDICT—WHEN AUTHORIZED.

Where a buyer of a patent for $10,000, of which $50 was paid at the time of the agreement of sale and $1,950 after title passed, gave a mortgage with the usual condition that it should be void provided he paid $8,000 due under the sale on or before a designated date, without dis-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

closing whether any note was taken for that amount, and where the question whether the mortgage constituted the entire agreement is in controversy, in an action by the seller on an alleged personal obligation of the buyer beyond the condition of the mortgage, the court should not direct a verdict against the plaintiff, if, on the most favorable view of any theory advanced by him, a doubtful question of fact is disclosed.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1064; Dec. Dig. § 363.*]

In Error to the Circuit Court of the United States for the District of Massachusetts.

Action by Gustav Adolph Larsen against Frank W. Neal and another. There was a judgment for defendants, and plaintiff brings error. Reversed.

Wade Keyes (Montague & Keyes, on the brief), for plaintiff in error.

Addison C. Burnham (Blodgett, Jones & Burnham, on the brief), for defendants in error.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

ALDRICH, District Judge. This writ of error relates to a situation in which Gustav Adolph Larsen, the owner of a United States patent for a device known as an otter trawl, something which is used for catching fish from steam vessels, claims to have sold it for $10,000 to the defendants. There are no questions of deceit or of failure of consideration.

Gustav Adolph Larsen lived in the kingdom of Norway, and gave T. H. Nilson & Son authority to proceed to the United States and dispose of the patent, but named as the minimum price the sum of $10,000. There was certain correspondence and negotiation between these agents and Capt. J. W. Collins, then chairman of the Fish and Game Commission of Massachusetts, who sought as broker to negotiate a sale to these defendants.

What appears in the record does not seem to be sufficient to justify an attempt to establish the ultimate right between the parties. The defendants did not put in any evidence, because a verdict was directed for the defendants upon the sole theory, so far as we can ascertain from the record, that the plaintiff did not make out any case. Enough does appear to show that there was some talk as to how much the purchasers of the patent should pay down, and it was finally agreed that $50 should be paid concurrently with the agreement of sale, and $1,950 after the title had passed.

The pleadings, and the testimony, indicate that the purchase price was $10,000, $50 and $1,950 to be paid down, and the balance of $8,000 was to be paid on or before May 1, 1907.

Though there was apparently no disagreement as to the amount of the purchase money of $10,000, and as to the amount remaining due after the two small sums were paid, the parties went to a firm of lawyers to have the papers drawn up, and, among other things

done, a mortgage was executed from John R. Neal and Frank W. Neal, the purchasers, with the usual mortgage condition that the mortgage is to be void provided they pay the sum of $8,000, the balance due under the original sale, on or before May 1, 1907; but, so far as appears in the mortgage, no note or notes were taken for that amount.

It would have been very useful if the particular grounds upon which the verdict was ordered had appeared through a rescript or upon the briefs, but nothing of that kind does appear; but the circumstances of the case and the briefs indicate that the verdict was ordered upon the sole ground that the mortgage expressed no personal debt or obligation on the part of the mortgagors. This doubtless was upon the theory that, there being no note or notes, no personal obligation was entered into beyond the condition that the mortgage might be foreclosed upon default of payment of the balance secured.

Our conclusion is that the question is one of so much doubt that a court should not undertake to establish the ultimate right one way or the other upon a partial hearing; and this is so because an entirely different aspect might be placed upon the question of the real intention of the parties, if the defendants had been required to answer what the plaintiff put before the jury. It is because of such uncertainty, and because the purpose always is to determine questions of ultimate right upon such proceedings as will best show the whole material situation, that the rule is now firmly established, and generally recognized, that no case will be ruled against the plaintiff, on demurrer, if, upon the most favorable view of any theory advanced by the plaintiff, a doubtful question can be seen. The case of Kansas v. Colorado, 185 U. S. 125, 22 Sup. Ct. 552, 46 L. Ed. 838, is a good explanation of the rules of caution which guide courts in this respect. While the two situations are not precisely the same, the principle involved is the same, and the reasons for caution are strongly analogous.

While we do not make any ruling upon the ultimate questions of right, and while we do not assume to determine any questions in regard to the admissibility of evidence, we do think it extremely doubtful whether a mortgage like this should be held to so far operate as a reduction of the entire agreement to writing as to exclude parol evidence of the actual facts relating to the sale and the actual indebtedness, and for these reasons:

It is ordered that the judgment of the Circuit Court be vacated, and that further proceedings be had not inconsistent with this opinion, and that the plaintiff in error recover costs in this court.